[No. 9647.  Department One.  November 4, 1911.]

THE CITY OF TACOMA, *Appellant*, v. J. E. BONNELL, *Respondent*.[1]

INDEMNITY—JOINT TORT FEASORS — LIABILITY OVER — CONTRIBU-TION—PARI DELICTO.  Where a judgment was recovered against a city engaged in selling electricity for profit, for wrongful death by electric shock, upon allegations that the city was negligent in fail-ing to install proper ground wires to protect its secondary circuit from a dangerous overcharge in case of contact with its primary circuit, and in failing to detect the overcharge after notice thereof and failing to turn off the current until remedied, the city can-not recover over from a third party whose concurrent negligence in allowing a plank to fall on the wires caused the contact and danger-ous overcharge, since they were joint wrongdoers *in pari delicto*.

Appeal from a judgment of the superior court for Pierce county,. Card, J., entered March 28, 1911, upon overruling demurrers to the answer, dismissing an action to recover over from a contractor the amount paid on a judgment for wrongful death.   Affirmed.

*T. L. Stiles, F. R. Baker*, and *F. M. Carnahan*, for appel-lant.

*J. B. Murphy* and *Hudson, Holt & Harmon*, for respondent.

MOUNT, J.—Plaintiff brought this action to recover from the defendant the amount of a judgment which the plaintiff was compelled to pay in the case of *Ohrstrom v. Tacoma*, 57 Wash. 121, 106 Pac. 629.   The complaint alleged, that the plaintiff maintained in the city of Tacoma primary and sec-ondary wires for the transmission of electricity for heating and lighting purposes; that the primary wire carried a cur-rent of 2,300 volts, dangerous to life, and the secondary wire carried a current of 220 volts, from which secondary wires electricity was supplied to its users; that the voltage on the primary wires was reduced by a transformer to 220

[1]Reported in 118 Pac. 642.

volts on the secondary wires; that these wires were secured to arms on posts, and the defendant negligently permitted some plank to fall on these wires and thereby caused the wires of the primary and secondary currents to come in contact, and that, as the result thereof, about 1,100 volts of the heavy voltage of the primary current was passed to a certain secondary wire; that the city had no notice or knowledge of this condition, and that John Ohrstrom came in contact with the secondary wire thus charged, and was killed; that his widow and minor children brought an action against the city and recovered a judgment amounting to $12,039.60, which the city was required to pay. The complaint also alleged that notice of said action was given to the defendant, and he was required to defend the same, which he neglected to do. The defendant answered the complaint and, after denying the principal allegations thereof, filed two separate affirmative defenses, as follows:

"(1) That in the action brought by Christina Ohrstrom and others against the city of Tacoma, which action is referred to in paragraphs 10, 11, 12, 15, 16 and 17 of plaintiff's complaint, no negligence on the part of this defendant was alleged, but the said plaintiffs state, as the negligence of the city of Tacoma, defendant in said action, on which the said action was based and for which a recovery was sought, in the following language: 'That death of plaintiffs' decedent as aforesaid was caused by the negligence of the defendant municipal corporation in failing to install proper permanent ground wires, or other connection, or other proper appliances to protect the secondary circuit aforesaid from being overcharged by high potential current from the primary circuit or other causes and to render said secondary circuit harmless to human life in the event that the said secondary circuit should become overcharged to such an extent as to become dangerous to human life; and to the further negligence of said defendant municipal corporation in permitting and allowing its said secondary circuit to become overcharged by a high potential electric current to such an extent as to be dangerous to human life; and to the further negligence of said defendant municipal corporation in failing

to detect, after notice thereof, the dangerous overcharge
upon its said secondary circuit, and in failing to take proper
and necessary steps to ascertain said dangerous condition of
said secondary circuit, and in failing to take proper steps
and precaution to render said secondary circuit in its known
dangerous and overcharged condition innocuous and harm-
less to human life by cutting off all current therefrom or by
other proper means.'

"(2)    That in its answer in said case the said city of Ta-
coma denied each and every allegation contained in that part
of the complaint of the plaintiffs which is quoted in the fore-
going paragraph hereof, and thereupon the plaintiffs in said
action replied to the said answer, and issue was joined therein
on all of the allegations of negligence contained in the said
complaint and set forth in the quotation therefrom in the
foregoing paragraph.

"(3)    That upon the trial of said action, evidence was
produced, offered, received, and placed before the jury that
tried the same, tending to prove each and every one of the
grounds and allegations of negligence referred to in the
quotation from the complaint set forth in the preceding par-
agraph hereof, except the allegation that the city of Tacoma,
defendant in said action, negligently permitted its secondary
circuit to become overcharged with electricity to such an
extent as to become dangerous to human life, and thereupon,
on the trial of the said cause, the judge who tried the same
instructed the jury that the plaintiffs therein had produced
no evidence tending to show negligence of the defendant
therein in causing the secondary circuit to become so over-
charged, and instructed the jury that they could not find the
said defendant negligent in that respect.

"(4)    That the issues hereinbefore referred to as to
whether said defendant, the city of Tacoma, was negligent
in any or all of the other matters set forth in that part of the
complaint in said action which is quoted in the foregoing
paragraph, were litigated and submitted to the jury for de-
termination under instructions given by the court with refer-
ence to each and every one of the said matters, and thereupon
the same were determined by the said jury, by a general ver-
dict in favor of the plaintiffs in said action and against the
said city of Tacoma, for the sum of twenty-seven thousand
dollars ($27,000).    That thereafter a judgment was ren-

dered on the said verdict, after the remission of part thereof by the plaintiffs in said action, and the said defendant, city of Tacoma, appealed from the said judgment to the supreme court of the state of Washington, and upon the hearing of the said appeal, on its merits, it was adjudged by the said court that sufficient evidence had been introduced at the trial of the said cause before the jury to submit to it the question whether the said defendant, city of Tacoma, was negligent in the matters and things charged as negligence and set forth in that part of the complaint in the said action which has been heretofore quoted in this affirmative defense. That thereafter a final judgment was rendered by the superior court of the state of Washington in said action, in accordance with the order and direction of the supreme court, for the sum of twelve thousand dollars ($12,000), and this is the judgment which is referred to in plaintiff's complaint in this action."

And for a further answer to plaintiff's complaint and as a second affirmative defense thereto, defendant alleges:

"(1)   That prior to the death of John Ohrstrom, this defendant had no knowledge or notice that the wires of the secondary system of the city of Tacoma, which supplied the electricity for lighting the Younglove Grocery Company, were in contact with the wires of the primary system supplying light to said company, and had no notice or knowledge that any of the wires of either said primary or secondary, or any other wires, of the city, or any other person or company in the vicinity of the Harmon building, mentioned in the plaintiff's complaint, were in contact, and no knowledge or notice that any of said wires had been torn loose, or otherwise loosened from their proper fastenings.

"(2)   That at the time of the death of said Ohrstrom, plaintiff, for its own profit, was dealing in electricity. That electricity is one of the most dangerous agencies known to modern science, and that the duty of the control of said agency was imposed on the plaintiff, and that it was the duty of the plaintiff to so safely control the same that the same might be conducted into places of business and homes in such manner that said agency should remain harmless; that the dangers arising from the business of furnishing electricity were dangers which were known to the plaintiff, and unknown

to the defendant, and that the means to be employed to remedy or guard against such dangers were within the knowledge of the plaintiff, but were not within the knowledge of the defendant, or the public generally, and that the plaintiff owed to its customers and the public the position of properly inspecting its circuits and wires as to their safety.

"(3)   That, notwithstanding the alleged and pretended negligence of this defendant, its agents and servants, referred to in plaintiff's complaint in this action, no injury would have resulted to the said John Ohrstrom if the plaintiff in this action had not been negligent in respect to the matters and things hereinafter set forth, which negligence caused, or contributed, to the death of the said John Ohrstrom, to wit:

"1st.   In failing to insulate its wires so that said wires would remain in contact without leakage until·such time as the contact thereof might, with proper care, be discovered and remedied.

"2d.   In failing to install proper permanent ground wires or other appliances to protect its secondary circuit from being overcharged by high potential current from the primary current, or other causes, and in failing to install proper appliances to render such secondary circuit harmless to human life in the event said secondary circuit should become overcharged.

"3d.   In failing to detect, after notice, that a condition which might be dangerous to life existed upon said primary circuit, the dangerous overcharge upon its secondary circuit, supplying said Younglove Grocery Company, and in failing to properly inspect said circuits, after notice that a condition which might be dangerous to human life existed upon the same, and in failing to ascertain the dangerous condition of said circuit after said danger had arisen.

"4th.   In failing to take proper steps to render said secondary circuit harmless by cutting off current therefrom, or by other proper means, after notice that a condition which might be dangerous to human life existed upon the primary circuit which supplied said secondary circuit."

The plaintiff demurred to each of these defenses. The demurrers were overruled. The plaintiff thereupon declined to plead further, and an order was entered dismissing the action. The plaintiff has appealed from that judgment.

The question presented here is whether the allegations of either of the separate defenses constitute a defense to the action.   It is conceded that there can be no contribution between joint tort feasors; but counsel for the city argue that, under the allegations of the answer, the city is not a joint tort feasor standing *in pari delicto* with the defendant in the commission of the act which caused Ohrstrom's death, that whatever negligence the city may have been guilty of was mere passive negligence, and that the active negligence of the defendant caused Ohrstrom's death.   The controlling question in the case, therefore, is whether the plaintiff and defendant stand *in pari delicto* to the wrong which caused the death of Ohrstrom.   According to the allegations of the first affirmative defense, which must be taken as true for the purposes of this appeal, it will be seen that no negligence was charged against this defendant in the case of Ohrstrom against the city.   The neglect there charged was solely against the city: that it failed to install proper ground wires to protect the secondary circuit against becoming overcharged by the powerful primary circuit, and thereby become dangerous to human life; that it failed to detect the dangerous overcharge after notice thereof, and that it failed to cut off the known and dangerous current upon its secondary wires; and these acts of negligence were relied upon and proved in the *Ohrstrom* case (see *Ohrstrom v. Tacoma*, 57 Wash. 121, 106 Pac. 629), and by reason thereof the city was held liable in damages.   We have, therefore, a case where the city was engaged in handling a dangerous agency, where it had notice of the dangerous character of the wires carrying such agency and of the methods ordinarily used to prevent danger, and had failed to remedy the dangerous condition.   Thereupon the defendant negligently or carelessly permitted or caused the dangerous wires to come in contact, and injury resulted to a third person.

It seems clear that, but for the concurring negligence of

the city and the defendant, no injury would have accrued. It is the rule that, where a municipal corporation is "held liable for damages sustained in consequence of the unsafe condition of the sidewalk or streets, it has a remedy over against the person by whose wrongful act or conduct the sidewalk or street was rendered unsafe, unless the corporation itself was a wrongdoer, as between itself and the author of the nuisance; . . ." 2 Dillon, Mun. Corp. (4th ed.), § 1035. *Seattle v. Puget Sound Imp. Co.*, 47 Wash. 22, 91 Pac. 255, 125 Am. St. 884, 12 L. R. A. (N. S.) 949. If a public street is maintained by the city in an unsafe or dangerous condition, and the negligence of a third party combines with that of the city to cause an injury to such third party, and such injury would or might not have occurred but for the combined negligence of the city and the second party, no recovery by either of the joint wrongdoers may be had against the other. *Denison v. Sanford*, 2 Tex. Civ. App. 662, 21 S. W. 784; *Consolidated Kansas City Smelting & Ref. Co. v. Binkley*, 45 Tex. Civ. App. 100, 99 S. W. 181; *Atlanta Consol. St. R. Co. v. Southern Bell Tel. & Tel. Co.*, 107 Fed. 874; *Churchill v. Holt*, 127 Mass. 165; *Trustees of Geneva v. Brush Elec. Co.*, 3 N. Y. Supp. 595; 2 Am. & Eng. Ann. Cases, 529 and note; 9 Cyc. 807.

In the case first above cited, the city in constructing its street left some stones inclined in such a way as to be dangerous. At night a party slipped on these stones, fell, and was injured. The city was held liable because of the dangerous condition and for failing to provide a light. It sought contribution from the gas company, whose duty it was to furnish the light. It was held that there could be no indemnity because the negligence of the city was a concurring cause of the injury. In *Consolidated Kansas City Smelting & Ref. Co. v. Binkley, supra*, the smelting company maintained a pipe over the track of the railway company. A servant of the railway company was injured while passing

under the pipe. Both companies were held liable as joint tort feasors. The court in that case said:

"That the maintaining and presence of the pipe was an existing and concurring cause of plaintiff's injury admits of no question. . . . It was clearly a proximate cause, and, though the injury may not have occurred had it not been for the negligent acts of the railway company, still, with the negligent acts of the railway company, it would not have occurred but for the coexisting act of the smelter company. . . . the maintenance of the pipe was clearly a continuing and concurrent act of negligence, which was in operation at the time of the accident."

In *Atlanta Consol. St. R. Co. v. Southern Bell Tel. & Tel. Co.*, *supra*, which was an action to recover the amount of a judgment for damages, rendered against the plaintiff for causing the death of an employee of the defendant, the complaint in the action alleged that the charge of electricity which killed the deceased was received from a feed wire of the defendant which it negligently permitted to cross and rest upon a telephone wire. In that case the court said:

"The fact that Mrs. Owings could recover against the Consolidated Company for the death of her husband under the circumstances, that company being under no special obligation or peculiar duty to Owings, to my mind necessarily adjudicates and determines the question of such negligence on the part of the Consolidated Company as would prevent a recovery against the Telephone and Telegraph Company. The very most that can be said, taking this entire case together —the declaration in the former suit and in this suit—is that they were joint wrongdoers, and that by their mutual fault these wires came in contact and this dangerous current was diverted."

The answer in this case shows that the city was guilty of negligence in maintaining its primary and secondary wires in a dangerous condition, when they might readily have made them safe so that injury would not result if the wires should come in contact. If the city had not been negligent in this respect, the accident could not have occurred, even though

the defendant in this action was negligent in causing the wires to come in contact.   The concurring negligence of both parties therefore caused the injury.   Under the authorities above cited, the parties were *in pari delicto*, and neither may recover against the other.

The judgment is affirmed.

Dunbar, C. J., Parker, and Gose, JJ., concur.