MIDDLESEX CONCRETE PRODUCTS AND EXCAVATING CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. THE BOROUGH OF CARTERET IN THE COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND LOUIS P. BOOZ, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 20, 1955—Decided July 8, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Melvin J. Koestler* argued the cause for plaintiff-respondent (*Messrs. Koestler & Koestler,* attorneys).

*Mr. Russell E. Watson* argued the cause for defendant-appellant, Borough of Carteret (*Messrs. Edward L. Webster, Jr.* and *C. John Stroumtsos,* of counsel).

*Mr. Elias A. Kanter* argued the cause for defendant-respondent, Louis P. Booz (*Messrs. Wilentz, Goldman, Spitzer and Sills,* attorneys; *Mr. David T. Wilentz,* of counsel).

The opinion of the court was delivered by

CLAPP, S. J. A. D.   We have before us here two questions, upon which we—as stated in our earlier opinion in this case, 35 *N. J. Super.* 226, 239 (1955)—called for further argument.

The defendant, Borough of Carteret, as is more fully set forth in that opinion, had asked leave of the trial court to amend its answer so as to add various matters, including two cross-claims against its codefendant, Louis P. Booz, set out respectively in the second and third counts of the proposed amendments.   The trial court denied the application with respect to the cross-claims.   We reversed, except as to one point which we left open, namely,—and this is the first question here—whether the proposed cross-claims should be permitted with respect to 90% of (what we termed in the opinion) the "last six estimates" made by Booz.

The import of the question will not appear without some review of the circumstances.   The action is by the plaintiff contractor against the borough for large sums allegedly due plaintiff in connection with certain contracts between it and the borough.   Booz, the engineer named in the contracts, was joined as a defendant on the ground, among others, that he was guilty of conspiracy with the borough in making certain estimates.   By the terms of the contract, Booz was directed to make, each month

"* * * an appropriate estimate of the value of the work done since the preceding estimate and ninety (90%) percent of the amount of such estimate shall be promptly paid the" plaintiff.

The borough's cross-claims charge Booz with fraud and conduct "equivalent to fraud."   In one cross-claim, that set forth in the second count, he and the plaintiff are accused of "acting in concert," *etc.*, in perpetrating this fraud or its equivalent; and in the other cross-claim, he alone is charged with much the same misdoings.   In both cross-claims it is alleged that he, in making the partial estimates, had certified to: materials never furnished by plaintiff; prices beyond those due it; and items improperly supplied in duplicate.

As we understand it, the affidavit submitted on the borough's behalf charges Booz with overcertification in the amount not only of $102,284.33 with respect to quantities of material, but also (and Booz' counsel seem not to have noticed this in making their first argument) of $233,912.45 with respect to prices.

Early in this action, the plaintiff, with the oral consent of the borough, secured a summary final judgment against the borough as to a part of its claims, namely. as to 90% of the last six estimates. The question here is whether in the face of that judgment, the cross-claims should be permitted as to 90% of these six estimates.

Booz argues that there are no facts establishing the charge against him of fraud or conduct equivalent to it. But the facts need not be established at this posture of the case. It might be noted, in passing, that the case has not, as yet, even reached the stage of the pretrial conference. The question now is whether it can be said from the affidavits, submitted by the borough on the motion to amend, that justice requires the amendment. *R. R.* 4:15–1.

What then does justice require here? Booz argues that as a matter of fairness the cross-claims should not be allowed because the borough would thus be suing him for what it, as a volunteer, had already paid to the plaintiff on the entry of the summary judgment. But—looking first at the cross-claim stated in the second count—we do not see why in the name of fairness we should say that this voluntary action taken by the borough benefiting one of two alleged confederates should operate to shield the other. And—looking at the other cross-claim in which Booz is alleged to be solely at fault—we find no reason either for saying that such action should furnish Booz with a shield there. It is not to be supposed that the borough paid the plaintiff knowing that the money was not due it.

It is claimed further that if the borough had acted with more diligence, the cross-claims would have been interposed before the entry of summary judgment and that in that circumstance the judgment doubtless would have gone in

favor of Booz as well as the plaintiff. Also it is said that the borough did not allow the plaintiff to take a judgment against it until after an independent investigation and until after it had, in effect, approved Booz' certifications (all of which seems to be true), and that it is therefore guilty of inconsistency now in pursuing Booz. But we do not know on what ground such lack of diligence and such inconsistency should deprive the borough of its cross-claims. No one asserts that by virtue of the doctrine of *res judicata* or of the law of the case, the cross-claims are barred; or that Booz has changed his position to his detriment, as a result of the summary judgment. As we see it, the case reduces itself to the simple question above suggested, namely, whether justice requires that the Borough be given its day in court on the matter. *R. R.* 4:15-1. We conclude that justice requires it.

The two cross-claims against Booz will be allowed both with respect to 90% of the last six estimates and also (as we held in our prior opinion) in all other respects. The trial court is reversed as to this.

The second question before us is whether the borough should be given leave to interpose a counterclaim against the plaintiff based on a breach of the following warranty set forth in the contracts:

"The [plaintiff] contractor represents and warrants:

\*     \*     \*     \*     \*     \*     \*     \*

(c) that such temporary and permanent Work required by the Contract Documents as is to be done by him can be satisfactorily constructed and used for the purpose for which it is intended, and that such construction will not injure any person or damage any property; \*  \*  \*."

This question, like the first, turns on the effect of the summary judgment with respect to 90% of the last six estimates. The inquiry here is whether the judgment bars this counterclaim.

As we understand it, the argument of counsel seems to focus largely on the possibility that the borough's claim for breach of warranty may be founded on facts which could also have constituted a defense to the claims adjudicated

upon by the summary judgment. It may well be that certain facts establishing non-performance of work done could make out not only a defense to the claims stated, but also a breach of warranty.

Counsel for the borough urge that the claim for breach of warranty is not barred in such a case. In accord, see *Restatement of Judgments* § 58*b*; also *id. Illustration* 4; *Scott,* 56 *Harv. L. Rev.* 1, 27–29 (1942); the United States Supreme Court, *Mercoid Corp. v. Mid-Continent Invest. Co.,* 320 *U. S.* 661, 671, 64 *S. Ct.* 268, 88 *L. Ed.* 376 (1943), dealing with a "permissive counterclaim"; *Note,* 49 *A. L. R.* 551, 553; 83 *A. L. R.* 642, 653.

On the other hand counsel for the plaintiff urge that *Mechanical Devices Co. v. General Builders,* 15 *N. J.* 566 (1952) (notwithstanding the fact that no judgment was entered in the prior action there) is to the contrary. Indeed it involves a warranty quite like the present one (*id.,* 27 *N. J. Super.* 501, 510 (*App. Div.* 1953)). Plaintiff's argument is that the court there, though it cited *R. R.* 4:12–2 and *Massari v. Einsiedler,* 6 *N. J.* 303 (1951) (see *Restatement of Judgments* § 66*c*), was in fact dealing with the waiver not only of defenses but also of affirmative claims. *Cf. New Jersey Highway Authority v. Renner,* 18 *N. J.* 485 (1955).

But this is not the case in which to decide which of these arguments states the law of New Jersey. The facts here may develop in the litigation so as to present any one of a number of variants on the issue stated. Thus it may be that at the time of the application for summary judgment, the breach of warranty had occurred and was then known to the borough or could then have been reasonably anticipated by it. On the other hand it may appear that the breach had not occurred at that time, or was not then known by the borough, or could not then have been reasonably anticipated by it. A further question arises with respect to the damages consequent on the breach: they may then have occurred, been known or reasonably anticipated—either in full or in one or more major respects; or on the other hand, in some major respect, they

may not then have occurred, been known or reasonably antici-
pated. If we are to accept plaintiff's argument above stated,
are we then to say further that the summary judgment
should bar only those future controversies which are reason-
ably in prospect at the time of the judgment? *Cf. Ever-
greens v. Nunan,* 141 *F. 2d* 927, 929 (*2 Cir.* 1944).

Other possibilities can be fancied. Thus it may turn out
that the borough's claims for breach of warranty are grounded
on facts which could not on any basis be said to have consti-
tuted a defense to the claims passed upon by the summary
judgment. Again, plaintiff argues that the borough's claim
on the warranty may be a "debt or demand capable of being
ascertained by calculation," and hence barred under *R. R.*
4:13–1 and *N. J. S. A.* 2A:15–48. *Schnitzer & Wildstein,*
*N. J. Rules Serv.* A IV–330 *et seq.* However plaintiff admits

"it is quite impossible to tell at this stage whether the damages
sought are liquidated within the meaning of *R. R.* 4:13–1 and
*N. J. S. A.* 2A:15–48."

We do not feel it incumbent upon us to answer all these
hypothetical questions of law, or any of them. The practical
course seems to be to remand the case and allow the counter-
claim to be interposed, subject to the issues being sharpened
on the pretrial conference and subject, in the ordinary course,
to such ruling on the questions passed by us, as the trial court
may make after the facts have been developed by the litigation.