38 N.J. Super. 419 (1955)
119 A.2d 172
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROY M. WALDROUP, DEFENDANT, AND GEORGE M. BREWSTER & SON, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued August 15, 1955.
Decided December 15, 1955.
*422 Before Judges SCHETTINO, HEGARTY and SPEAKMAN.
Mr. Richard Fryling argued the cause for the appellant (Mr. Luke A. Kiernan, Jr., attorney).
Mr. John E. Hughes argued the cause for the respondent (Messrs. Shaw, Hughes and Pindar, attorneys).
The opinion of the court was delivered by SPEAKMAN, J.S.C. (temporarily assigned).
The genesis of this controversy was an accident which occurred on August 17, 1951 in the vicinity of Bordentown near the interchange between the New Jersey Turnpike and Route 39 (now Route 206).
The defendant George M. Brewster & Son, Inc., under contract with the Turnpike Authority, was engaged in constructing the interchange and the Turnpike, in the course of which it was transporting dirt fill for the purpose of raising the ground elevation near a new overpass over Route 39. This fill was being dumped near one of the poles of a temporary electric distribution line, owned and maintained by plaintiff Public Service Electric & Gas Company. The upper end of a guy wire was attached to the pole above some of the *423 high voltage lines and the lower end was anchored in the ground some distance from the pole. The guy wire was not energized, but the distribution lines carried two 26,000-voltage circuits, one 4,000-voltage circuit and one series street light circuit.
At the time of the accident Ralph L. Snyder, an employee of defendant, was standing on the ground near this pole. Roy M. Waldroup, an employee of defendant who was operating a Euclid dirt mover, attempted to drive it between the base of the pole and the place of anchorage of the guy wire, but in doing so, drove it against the guy wire in such a manner as to cause it to break. The broken portion attached to the pole came in contact with a high voltage electric wire and became charged. The loose end of this portion of the guy wire swung through the air and came into direct contact with Snyder, causing his instant death by electrocution.
On September 7, 1951 Snyder's widow as administratrix ad prosequendum instituted an action for wrongful death in the Law Division of the Superior Court against the present plaintiff, alleging that its negligence, in the respects hereinafter detailed, caused decedent's death. Judgment by consent in the amount of $60,000 was entered in that action on June 4, 1953, and on June 22, 1953 the judgment was paid by Public Service.
Thereafter, on July 21, 1953, the present action against Waldroup and Brewster was commenced in the Law Division. The complaint is in four counts. The first and second counts seek recovery, by way of indemnity, of the full amount of $60,000 from Waldroup and Brewster respectively. Alternatively, the third and fourth counts seek contribution of $30,000 from the same parties.
The theory of the cause of action first asserted is that the plaintiff, an alleged passive tort-feasor, is entitled to full indemnity from the defendants, alleged to be active tort-feasors. The theory of the alternative cause of action is that plaintiff and defendants are joint tort-feasors and that plaintiff, having paid the injured third party in full, is *424 entitled to contribution under the Joint Tort-Feasors Contribution Act.
The service of the summons and complaint upon the defendant Waldroup was set aside, and the action was continued against defendant Brewster alone, on the second and fourth counts of the complaint. In its answer this defendant denied the allegations of negligence and pleaded a number of affirmative defenses to the asserted causes of action. We need mention only four: (1) plaintiff was guilty of active and primary negligence; (2) plaintiff is estopped by the judgment in the action previously mentioned from denying that it was guilty of active negligence; (3) in consideration of defendant's payment to plaintiff of the sum of $34.33, the value of the guy wire broken by defendant's employee, plaintiff on October 30, 1951 released defendant from all claims arising out of the accident of August 17, 1951, and (4) defendant's liability as a result of the death of its employee is determined exclusively by the Workmen's Compensation Act, and therefore, plaintiff is not entitled to recover from it either indemnity or contribution.
At the trial, at the close of the plaintiff's case, defendant moved for an involuntary dismissal of both the second and fourth counts: of the fourth count on the ground that it appeared conclusively that Snyder's death was caused by an accident arising out of and in the course of his employment with the defendant, and therefore, plaintiff was not entitled to contribution under the holding in Farren v. New Jersey Turnpike Authority, 31 N.J. Super. 356 (App. Div. 1954); and of the second count on the ground that plaintiff had failed to establish a claim. The motion was denied with respect to the second count, but granted as to the fourth count.
Defendant proceeded with its defense and presented a number of witnesses and introduced into evidence the record in the action brought by Snyder's administratrix ad prosequendum against the present plaintiff, consisting of the complaint, answer, pretrial order and judgment entered therein.
*425 At the conclusion of the presentation of all the evidence, defendant moved for an involuntary dismissal of the second count on the ground that the judgment entered by consent in the prior action constituted an adjudication that the present plaintiff was guilty of active negligence and that plaintiff was bound by it. The trial judge granted the motion, and from the subsequent judgment entered in favor of the defendant on both the second and fourth counts of the complaint, the plaintiff appealed.
Prior to argument the appeal from the dismissal of the fourth count was abandoned, so there is presented for our determination only the validity of the judgment dismissing the second count.
Plaintiff's argument that the judgment should be reversed is two fold. It asserts, first, that under the proofs a jury question was presented as to whether its admitted negligence was "mere passive negligence"; and second, that the doctrine of estoppel by judgment or collateral estoppel has no application because (a) there is no identity of parties in the present action with those involved in the prior action and (b) there was no litigation of issues in the prior action.
We first consider plaintiff's second argument. It is a fundamental rule that facts and questions in issue in an action and there admitted or judicially determined are conclusively settled by a judgment entered therein, and such facts or questions become res judicata in all subsequent litigation between the same parties and their privies. Hancock v. Singer Mfg. Co., 62 N.J.L. 289 (E. & A. 1898); Middlesex Concrete, etc., Corp. v. Borough of Carteret, 35 N.J. Super. 226 (App. Div. 1955)  as to a related aspect of the same case, see 36 N.J. Super. 400 (App. Div. 1955), certification denied 19 N.J. 383 (1955), and 19 N.J. 384 (1955); 30 Am. Jur., Judgments, sec. 178; 50 C.J.S., Judgments, § 686. This is known as the doctrine of collateral estoppel or estoppel by judgment and is to be distinguished from the doctrine of res judicata, which is that in any action on a cause previously litigated by the same parties or their privies, a general judgment in the prior action is considered *426 a finding against the party affected on all grounds that were or could have been raised therein. Kelley v. Curtiss, 16 N.J. 265 (1954); Middlesex Concrete, etc., Corp. v. Borough of Carteret, supra; 30 Am. Jur., Judgments, secs. 161-177, and cases cited therein.
A judgment by consent is presumed to be entered in the light of all the existing circumstances of the litigation. Although such a judgment is considered a contract of the parties acknowledged and sanctioned by the court, it is regarded as an adverse judgment and is conclusive and effective as an estoppel to the same extent as though entered after a full trial. Fidelity Union Trust Co. v. Union Cemetery Association, 136 N.J. Eq. 15 (Ch. 1944), affirmed per curiam, 137 N.J. Eq. 455 (E. & A. 1946) and 137 N.J. Eq. 456 (E. & A. 1946); Middlesex Concrete, etc., Corp. v. Borough of Carteret, supra; 31 Am. Jur., Judgments, sec. 458; 50 Am. Jur., Judgments, sec. 705.
There is little authority, see Annotation, 2 A.L.R.2d 514, to support plaintiff's contention that for an issue to have been litigated for the purpose of estoppel, there must have been a verdict or a finding on evidence presented at a trial. On the contrary, the authorities previously cited herein, as well as innumerable others, hold either expressly or by necessary implication that a fact or question has been litigated if it has been put in issue by the pleadings and a judgment by consent has been entered thereon. Such a judgment constitutes an adjudication on the merits. Davis v. Leach, 121 F. Supp. 58 (D.C.E.D. Tex. 1954); 15 R.C.L., Judgments, sec. 90.
The contrary view urged by plaintiff would seriously impair the effectiveness of the judicial process. Consent judgments are entered daily in our courts, and if they do not have a binding effect as to all of the issues raised, it would not be long before resort to this expeditious way of terminating litigation would cease. Certainly, under our present practice, which allows parties to protect themselves by providing for partial judgments and special findings to be made on issues of fact, a general judgment entered by consent should *427 have as great if not greater adjudicative efficacy as to all of the questions in issue as one entered after a trial. See Berry v. Somerset Ry., 89 Me. 552, 36 A. 904 (Sup. Jud. Ct. 1897); Deaver v. Jones, 114 N.C. 649, 19 S.E. 637 (Sup. Ct. 1894); Keen v. Parker, 217 N.C. 378, 8 S.E.2d 209 (Sup. Ct. 1940), which hold that a consent judgment, since it is by agreement, should have greater binding effect than the one otherwise entered. But see 31 Am. Jur., Judgments, sec. 464, n. 1.32.
It remains to be determined whether active negligence on the part of the present plaintiff was put in issue in the Snyder action, and if it was, whether the plaintiff is estopped in this action between different parties. Plaintiff has not asserted, as indeed it would be difficult to assert, that the culpable acts alleged against it in the earlier action and denied by it did not constitute active negligence. Indeed, an examination of the Snyder complaint readily demonstrates the utter futility of such a contention. It contained the following allegations:
"4. Some time prior to and on August 17, 1951, defendant [plaintiff here], in the conduct of its business, located, constructed, erected and maintained poles, guy wires and wires charged with a deadly current of electricity in the midst of the area of construction for the New Jersey Turnpike Authority of highways, approaches and overpass connecting New Jersey State Highway Route No. 39 with an interchange to the New Jersey Turnpike in or near the City of Bordentown, County of Burlington, State of New Jersey.
5. Prior to the time defendant located, constructed, erected and maintained said poles, guy wires and charged wires, as aforesaid, and at the time of said location, construction, erection and maintenance, and at all times thereafter, including August 17, 1951, defendant knew when the said construction of highways, approaches and overpass was about to begin, had begun, and was taking place.
6. Defendant knowingly and negligently located, constructed, erected and maintained the said poles, guy wires and charged wires in the midst of the said construction of highways, approaches, and overpass, well knowing that the said construction would necessitate and did necessitate, before and on August 17, 1951, the use of a large number of men, mobile construction equipment of many types, the carriage, deposit and spreading of dirt fill by trucks, bulldozers and other mobile construction equipment and machinery, and other activities usual for such type of highway, approach and overpass *428 construction, all of which would be and was present, used and took place between and around the said poles, guy wires and charged wires.
7. Despite said knowledge, defendant negligently failed to locate, construct, erect and maintain said poles, guy wires, wires charged with a deadly current of electricity and other fixtures and appurtenances in a safe and proper manner and negligently located, constructed, erected and maintained said poles, guy wires, wires charged with a deadly current of electricity and other fixtures and appurtenances in a dangerous manner and condition and without the proper safety appliances and measures, and without notice or warning of the resultant danger to persons lawfully and properly engaged in the said construction of highways, approaches and overpass.
8. On August 17, 1951, the said deceased Ralph L. Snyder, was lawfully and properly carrying out his duties of employment near and about one of defendant's said poles as an employee of a contractor constructing the said highways, approaches and overpass at the said location. Because of defendant's negligence as aforesaid, one of defendant's said guy wires attached to defendant's said pole broke or was broken and became charged with a deadly current of electricity from defendant's said charged wires and came in contact with said Ralph L. Snyder on August 17, 1951 with the result that he was killed by said deadly current of electricity, all without any negligence on his part."
The consent judgment, entered in the following form, is clearly a general judgment on all of the issues in that action:
"The above entitled action having been set down for trial by jury on June 16, 1953 and it now appearing that the parties hereto, by their attorneys, have waived trial by jury and have consented hereto:
It is, on this 2nd day of June 1953, ORDERED that judgment be entered in favor of the plaintiff, Elizabeth Snyder, Administratrix ad Prosequendum of the Estate of Ralph L. Snyder, deceased, against the defendant, Public Service Electric and Gas Company for the sum of $60,000.00 without costs."
There can be no doubt that that judgment constitutes an adjudication that Ralph L. Snyder's death was caused by the active negligence of the present plaintiff, and we find no merit in plaintiff's contention that it should not be estopped by that judgment because the parties here are different.
Whatever the rule may be elsewhere, and we do not say that it is different from ours, the law in this State is that where, as here, a putative indemnitee relies on a judgment *429 against him in an action against the putative indemnitor, he is bound by the adjudicated facts on which that judgment rests. George M. Brewster & Son, Inc., v. Catalytic Construction Co., 17 N.J. 20 (1954).
In that action the plaintiff (who, it is interesting to observe, is the defendant here) claimed indemnity from the defendant under an express provision of a contract for the rent of a crane. Three employees of the bailee were injured by a falling boom of the crane. These employees sued the bailor for personal injuries and recovered judgments. Roberts v. George M. Brewster & Son, Inc., 13 N.J. Super. 462 (App. Div. 1951), certification denied 7 N.J. 582 (1951). The bailor, Brewster, then brought the action against Catalytic, the bailee, for indemnity according to the rental arrangements. The court pointed out that in the prior action the employees' case had been submitted to the jury on two theories of fault imputable to Brewster: (1) that Brewster supplied a dangerous and defective crane; (2) that negligence by the operator of the crane was laid to Brewster under the doctrine of respondeat superior; that there had been a general verdict and judgment against Brewster and that there had been no demand that the jury return a special verdict which would reveal the adjudicated facts.
There, as here, the plaintiff relied upon the stipulations concerning the institution of the actions against it by the workmen, the entry of judgments in favor of the workmen, the amounts thereof, and the subsequent payment of the judgments. There, as here, the defendant introduced into evidence the record of the judgments in favor of the injured workmen, and there too, as here, the plaintiff argued that it was not bound by them because it did not rely upon the record of the judgments, but relied upon stipulations or admissions.
In holding that the verdict in the prior action was deemed to be a finding against Brewster on all the issues submitted to the jury and in rejecting the foregoing contentions of the plaintiff, Mr. Justice Heher, writing for the court, said (17 N.J., at page 34):
*430 "The record of the judgments in favor of the workmen was introduced into evidence by Catalytic. Brewster maintains that `in view of the stipulations concerning the amounts of the judgments, the institution of suit in the Roberts case, the rendering of judgments in favor of the injured plaintiffs against Brewster, and the subsequent payment thereof, and the fact that the incident occurred while the crane and boom were on the job site where it had been delivered pursuant to the lease-contract to Catalytic, it became unnecessary to rely upon the record of the previous case to establish these facts.'
But it would seem to be axiomatic that Brewster may not invoke the record of the judgments for the workmen to prove the losses thereby sustained, and the occurrence of the `incident'  the tortious injuries  while the mechanism was `on the job site where it had been delivered' to Catalytic under the contract, and at the same time deny its delivery to Catalytic of a `defective and dangerous' mechanism as the ground of the liability established by the judgment record itself. Having invoked the judgment record, Brewster is on the plainest considerations of reason and logic precluded from impugning either the ruling principle or the basic facts adjudicated as revealed by the record, and thereby asserting in effect that the recoveries were erroneous. Where the indemnitee relies on the judgment against him in the earlier action, as the basis of his right of recovery over, he `must take for better or worse the adjudicated facts on which the judgment rests.' Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 (Sup. Ct. 1951). See also Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (Ct. App., 3 Cir. 1953). He cannot both approbate and reprobate."
Consequently, the court concluded that the plaintiff's cause of action had not been sustained because the general verdict against Brewster was presumed to include a finding that the crane was dangerous and defective when delivered to Catalytic, a circumstance not covered by the indemnity clause of the lease agreement.
The reasoning of the opinion in George M. Brewster & Son, Inc., v. Catalytic seems to us unanswerable, and is directly applicable here. Accordingly, we agree with the trial court that the plaintiff is estopped by the judgment in the prior action from denying that decedent's death was due to its active negligence.
So far it has been assumed that if it was not estopped by the Snyder judgment plaintiff's proofs made out a prima facie case for indemnity; but is this assumption valid? We think not. The exception to the general rule that in the *431 absence of statute there cannot be contribution or indemnity between joint tort-feasors is well stated in Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 (Sup. Ct. 1951) where Justice (now Chief Justice) Stern said (77 A.2d, at pages 370 and 371):
"It will be noted that plaintiff's statement of claim sought recovery either for the entire $3,000, which, if allowed, would be by way of indemnity, or such part thereof as might be recoverable if it were found that plaintiff and defendant were joint tortfeasors, which, if allowed, would be by way of contribution. There is, of course, a fundamental difference between indemnity and contribution. The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence,  a doctrine which, indeed, is not recognized by the common law. See Fidelity & Casualty Co. of New York v. Federal Express, Inc., 6 Cir., 136 F.2d 35, 40. It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. * * *
[After citing various examples, he continued as follows:]
Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them *432 in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury. * * *"
This rule is widely recognized throughout the United States, Union Stock Yds. Co. of Omaha v. Chicago B. & Q.R.R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905); Central of Georgia Ry. Co. v. Macon Ry. & Light Co., 9 Ga. App. 628, 71 S.E. 1076 (1911); City of Tacoma v. Bonnell, 65 Wash. 505, 118 P. 642, 36 L.R.A., N.S., 582 (Sup. Ct. 1911); Fidelity & Casualty Co. of New York v. Federal Express, 136 F.2d 35 (6 Cir. 1943); Massachusetts Bonding and Ins. Co. v. Dingle-Clark Co., 142 Ohio St. 346, 52 N.E.2d 340 (Sup. Ct. 1943); Globe Indemnity Co. v. Schmitt, 142 Ohio St. 595, 53 N.E.2d 790 (Sup. Ct. 1944), and we are satisfied that it is the law of New Jersey, Durant v. Palmer, 29 N.J.L. 544 (E. & A. 1862); Popkin Bros., Inc., v. Volk's Tire Co., 20 N.J. Misc. 1 (Sup. Ct. 1941); Martz Coach Co., Inc., v. Hudson Bus Transp. Co., 23 N.J. Misc. 342 (Sup. Ct. 1945).
It will be observed that the right of indemnity is granted only to those whose liability is secondary and not primary, i.e., whose negligence is not morally culpable but is merely constructive, technical, imputed or vicarious.
It is established by the undisputed evidence in this case that plaintiff's conceded liability for Snyder's death was not secondary; it did not rest upon a fault of defendant's imputed to it by some positive rule of law or legal relationship between them. It was primary and was directly the result of plaintiff's failure to fulfill its duty to the decedent, to whom it owed a high degree of care. Adams v. Atlantic City Electric Co., 120 N.J.L. 357 (E. & A. 1938).
The temporary relocation of the highly charged wires was designed entirely by Mr. Hall, an employee of the plaintiff. By his instructions the guy wire stabilizing the pole carrying these wires was placed above the lowest energized wire, and when first installed, no strain ball insulator was put in the guy wire. The function of such an insulator is to prevent electricity from traveling down a guy wire to the ground *433 beyond the point where it is placed. The guy wire was installed in such a manner that it was readily foreseeable that if it became loose or broken it could come in contact with the highly charged transmission lines and be likely to kill anyone it then touched.
Plaintiff relocated the transmission lines because of the construction work taking place in the vicinity and had actual knowledge of work being done near the particular pole involved. On June 21, 1951, slightly less than two months before the accident, the same guy wire had been broken by men working there, and plaintiff's line foreman repaired it the same day. Then, for the first time a strain insulator was placed in the guy wire at a distance above the existing ground level estimated by plaintiff's witness at 12 or 15 feet, and by defendant's witnesses at four or five feet. This is an immaterial dispute, since plaintiff was chargeable with knowledge that dirt fill was being brought in which would raise the ground level, and in view of the fact that its witness admitted that the insulator could easily have been placed higher, thus assuring the prevention of such tragedies as the one which subsequently occurred.
Plaintiff argues, however, that the right to indemnity is not limited to one secondarily liable but extends also to one who is liable by reason of passive negligence. While it is true that some courts have based indemnity merely upon a difference between the kinds of negligence of the two tort-feasors, perhaps, as Chief Judge Learned Hand suggested, as a lenient exception to the common-law rule denying contribution between joint tort-feasors, Slattery v. Marra Bros., 186 F.2d 134 (2 Cir. 1951), we can find no case in which an appellate court of this State has heretofore viewed this rule with favor, and we see no reason for adopting it now.
On the contrary, our Joint Tortfeasor Contribution Law, N.J.S. 2A:53A-1 et seq., has cured the inequity of the common-law rule against contribution, and we fail to see any reason for creating a new inequity between joint tort-feasors  when that is the only relationship between them  by placing the entire burden upon the so-called active tort-feasor and *434 entirely relieving the so-called passive one. The decision in Popkin Bros., Inc., v. Volk's Tire Co., 20 N.J. Misc. 1 (Sup. Ct. 1941), relied upon by the plaintiff, was not on the merits but was on a motion to strike a complaint as being insufficient in law. There the complaint was by one joint tort-feasor against another for contribution or reimbursement. The plaintiff, Popkin Bros., had paid a claim against it by a pedestrian who had been injured when a rim of a wheel on one of its trucks gave way as a result of faulty installation and inspection of the tire and rim by Volk's Tire Co., the defendant. Popkin Bros.' liability to the injured party was not caused by any morally culpable act on its part; its only fault was failure to discover the defective installation by the tire company. Since the complaint was clearly sustainable against the indemnitor for breach of contract in failing properly to set and inspect the tire and rim, Judge (now Justice) Oliphant rightly refused to strike it. In view of the contractual relationship between the plaintiff and the defendant, we cannot read his opinion as extending the right of indemnity to situations where the only legal relationship between the parties is that of joint tort-feasors.
Even if we should assume that there exists in this State the right of a tort-feasor passively negligent to be indemnified by the actively negligent tort-feasor, we fail to see how plaintiff's proofs tend in any way to establish that it was passively negligent.
It was plaintiff's duty to construct, locate and guard its high voltage transmission lines in such a manner as not to be dangerous to the public and those, to its knowledge, working near and about them, and this duty could not be shifted to the defendant. Its failure to properly discharge this duty in the respects previously adverted to herein constituted, in our judgment, active and not passive negligence. Central of Georgia Ry. Co. v. Macon Ry. & Light Co., 9 Ga. App. 628, 71 S.E. 1076 (1911); City of Tacoma v. Bonnell, 65 Wash. 505, 118 P. 642, 36 L.R.A., N.S., 582 (Sup. Ct. 1911); North Carolina Electric Power Co. v. French Broad Mfg. Co., 180 N.C. 597, 105 S.E. 394 (Sup. Ct. 1920).
*435 In North Carolina Electric Power Co. v. French Broad Mfg. Co., supra., the factual situation was, in many respects, strikingly similar to the present one. There, the plaintiff for years had maintained uninsulated high-tension power lines about 11 feet above the ground leading to a transformer house on the defendant's premises. The defendant began putting in fill alongside the transformer house several months prior to the accident in question, and when it happened the wires were within five or six feet of the ground level. An 11-year-old boy came in contact with these wires and was electrocuted. Both the plaintiff and defendant were held liable in an action brought for the boy's death. The plaintiff paid that judgment and brought an action for indemnity, claiming that defendant's negligence in putting in fill and thus raising the ground level was the primary cause of the boy's death. The North Carolina Supreme Court rejected this contention and held that no right of indemnity existed since the plaintiff had a primary duty to guard its wires which could not be shifted to the defendant and that its failure to properly guard the wires was a concurrent cause of the accident.
Our comprehension of the factual situation disclosed in the record before us leads inescapably to the conclusion that the authorities relied upon by plaintiff, McFall v. Campagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463 (Ct. App. 1952); Restatement, Restitution, secs. 94 and 95, are inapplicable. Plaintiff's negligence as to Snyder did not lie merely in its failure to raise the height of the strain ball insulator or take other precautionary measures as the ground level was raised by the fill being brought in and dumped by defendant. The manner in which plaintiff constructed, located and maintained the uninsulated wires, as previously described, and the manner in which it repaired the guy wire after it was first broken were affirmative acts amounting to active negligence under any rational view, and at the least constituted a concurrent cause of the accident, which disentitles it to indemnity from defendant.
*436 If we assume the existence of a right of action by a passive tort-feasor against an active tort-feasor and that plaintiff's proofs tend to bring the parties within the claimed categories of tort-feasors, then there emerges for consideration the question as to whether the defendant is protected by the Workmen's Compensation Act against a claim for indemnity to the same extent as it is against a claim for contribution. See Farren v. New Jersey Turnpike Authority, 31 N.J. Super. 356 (App. Div. 1954).
This matter, apparently of novel impression in this State, was put in issue by defendant's "Eighth Defense to the Second Count" but was not raised at the trial, nor was it mentioned in the briefs on this appeal. However, it was discussed briefly at the oral argument, and while counsel indicated a willingness to have the appeal decided without reference to it, we feel that it should be disposed of, since our failure to mention it, under the circumstances, might be understood as indicating that the statute is not a bar.
In determining this question we are not concerned with the right to indemnity when the obligation arises by reason of an express contractual relationship. In that situation it has been held in this State, Yearicks v. City of Wildwood, 23 N.J. Super. 379 (Law Div. 1952), and see George M. Brewster & Son, Inc., v. Catalytic Construction Co., 17 N.J. 20 (1954), that the exclusive remedy provision of our act, R.S. 34:15-8, is not a bar to an action against the employer of the injured employee.
Nor are we concerned with those cases like Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567 (Ct. App. 1938), relied upon by plaintiff; see also Annot. in 140 A.L.R. 1036, where in the absence of an express contract indemnity has been based on a separate duty owing to the indemnitee tort-feasor from the employer tort-feasor, and we express no opinion as to their soundness. But see Chief Judge Crane's dissent in the Westchester case. In those cases the courts have generally implied a promise of indemnity by the employer. 2 Larson, The Law of Workmen's Compensation, 240.
*437 We are concerned exclusively with the question of whether the act bars a claim for indemnity when the only relationship between the parties is that of joint tort-feasors. In this situation some courts have held that the exclusive remedy provisions of compensation acts are not a bar. Rich v. United States, 177 F.2d 688 (2 Cir. 1949); McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463 (Ct. App. 1952); American District Telegraph Co. v. Kittleson, 179 F.2d 946 (8 Cir. 1950). However, an examination of those cases reveals that the decision was, or could have been, rested upon the existence of some legal relationship between the parties other than that of mere joint tort-feasors.
Other, and in our view better reasoned cases hold that provisions similar to that in our act do constitute a bar to such an action. Bankers Indemnity Ins. Co. v. Cleveland Hardware and Forging Co., 77 Ohio App. 121, 62 N.E.2d 180 (Ct. App. 1945); Slattery v. Marra Bros., 186 F.2d 134 (2 Cir. 1951); Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 75 S.E.2d 768 (Sup. Ct. 1953).
This latter view is more in accord with the reasoning of the decision in Farren v. New Jersey Turnpike Authority, 31 N.J. Super. 356 (App. Div. 1954), since we can see no rational basis for allowing one tort-feasor to recover from another the full amount paid to the injured employee when contribution of one-half the amount paid is denied to him.
This result was forecast by Chief Judge Learned Hand in Slattery v. Marra Bros., supra, where he said (186 F.2d, at page 139):
"* * * we shall assume that, when the indemnitor and indemnitee are both liable to the injured person, it is the law of New Jersey that, regardless of any other relation between them, the difference in gravity of their faults may be great enough to throw the whole loss upon one. We cannot, however, agree that that result is rationally possible except upon the assumption that both parties are liable to the same person for the joint wrong. If so, when one of the two is not so liable, the right of the other to indemnity must be found in rights and liabilities arising out of some other legal transaction between the two. However, in the case at bar, not only was the [employer] * * * not liable to [the injured employee] *438 * * *, but it had no contract with [the other tortfeasor] * * * or any other legal relation with it except that of joint tortfeasor. Unless therefore there be some controlling authority to the contrary, the amended complaint was rightly dismissed.
There is no such authority: none whatever in New Jersey, and none outside to which we think its courts would feel bound to yield. * * * So far as we can see therefore there is nobody of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result. As always, it is embarrassing to have to pass upon the law of a State whose courts have not decided the question. However, in cases depending upon the `diversity jurisdiction' that often happens; we are then forced to prophecy, and in the case at bar our best forecast is that under the law of New Jersey the complaint was properly dismissed."
With that prognosis we are in emphatic accord.
With respect to defendant's contentions that the judgment should be affirmed (a) because the release given at the time of the payment of $34.33 for the broken guy wire constituted a release of this cause of action, and (b) because there was no evidence at the trial below on the question of defendant's negligence that could be submitted to the jury, it is sufficient to say that they both lack merit. As to the release, we cannot see how it can rationally be said that it was intended to release this claim, and as to the other contention, we feel that there was sufficient evidence to raise a jury question if plaintiff were not barred for the reasons stated herein.
Judgment affirmed.