35 N.J. Super. 226 (1955)
113 A.2d 821
MIDDLESEX CONCRETE PRODUCTS AND EXCAVATING CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE BOROUGH OF CARTERET IN THE COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND LOUIS P. BOOZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1955.
Decided April 28, 1955.
*230 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Melvin J. Koestler argued the cause for plaintiff-respondent (Messrs. Koestler & Koestler, attorneys).
Mr. Russell E. Watson argued the cause for defendant-appellant Borough of Carteret.
Mr. Elias A. Kanter argued the cause for defendant-respondent Louis P. Booz (Messrs. Wilentz, Goldman, Spitzer and Sills, attorneys; Mr. David T. Wilentz, of counsel).
The opinion of the court was delivered by CLAPP, S.J.A.D.
We are concerned on this appeal with two questions: did the trial court err in refusing to open a summary judgment entered for the plaintiff and against the defendant borough as to 6 of the 23 counts of the complaint  the remaining counts not having as yet been reached for trial; and did it err in denying the Borough's application to amend its answer so as to add thereto certain separate defenses, counterclaims and cross-claims.
Plaintiff had contracted to construct for the defendant borough a sewage treatment plant and other facilities and, by a separate contract, to furnish and erect certain structural steel, all on a unit price basis (that is, without fixing an overall price). The other defendant, Louis P. Booz, an engineer designated in the contracts as the borough's representative, was directed therein to make, each month
"* * * an approximate estimate of the value of the work done since the preceding estimate and ninety (90%) percent of the amount of such estimate shall be promptly paid the" plaintiff. *231 When in Booz' opinion the work was completely performed, he was to submit a certificate and a final estimate of the value of the completed work, and payment was then to be made to the plaintiff of the balance remaining due, with certain deductions. But there was this important proviso stated in the contract:
"All prior partial estimates and payments shall be subject to correction in the final estimates and payments."
Booz made 13 partial estimates under the general contract and 1 under the steel contract, and the borough paid 90% of each, some $1,700,000. Thereafter Booz certified partial estimates Nos. 14 to 18, inclusive, under the general contract and No. 2 under the steel contract (we have designated them herein, for short, as the "last six estimates"), but these the borough declined to pay. This suit followed, and Booz never made any further certificates.
The six counts of the complaint, on which the summary judgment was taken, are for the 90% (total $340,000) claimed respectively as to each of the last six estimates. In other counts the plaintiff sued not only for the remaining 10% allegedly due on partial estimates Nos. 1 to 18 on the general contract and Nos. 1 and 2 on the steel contract, but also for work done but not certified to, as well as for large damages and other items. Its demands totalled $1,800,000.
When the application for summary judgment was moved, the borough obtained an adjournment of two weeks to enable it to study a report of Philip S. Miller, an engineer of considerable experience, who for over a month had been conducting an investigation of the project apparently in behalf of an association of industries located in the borough. In the two-week period the borough's counsel and Miller conferred as to the motion. The upshot was that on the adjourned day, the borough not only put in no defense to the motion, but, it is important to observe, orally consented, through its attorney, to the summary judgment, which is final in form and includes in its terms the formulary prescribed *232 by R.R. 4:55-2. That judgment was for $340,000, and the borough thereupon paid it.
Eight months later, the borough moved to open the judgment and amend its pleadings as stated above, relying on an affidavit of still another engineer retained four months after the judgment. This appeal is from the order denying that motion.

I.

THE EFFECT HERE OF R.R. 4:55-2.
The summary judgment was entered as to a fraction (90%) of a small part of the sum allegedly due on the contracts, a variable fraction at that  that is, a fraction of a partial estimate which was subject to revision in the final estimate. We need not decide whether under R.R. 4:55-2 the trial court may endow such a judgment with finality.
See 6 Moore's Federal Practice (2nd ed.), at p. 8, 232, n. 12, dealing with a "partial adjudication" of a claim; at p. 220 as to whether the court's certificate of finality in such a case is nugatory; and at p. 239 suggesting that doubts be resolved in favor of appealability. As to whether under the rule a "split final judgment" may be rendered only with respect to a separate, entirely distinct claim, arising out of a transaction differing from that involved in other claims joined in the action, see Town of Clarksville v. United States, 198 F.2d 238, 240 (4 Cir. 1952); Dyer v. MacDougall, 201 F.2d 265, 267 (2 Cir. 1952); Leonidakis v. International Telecoin Corp., 208 F.2d 934 (2 Cir. 1953); United States Plywood Corp. v. Hudson Lumber Co., 210 F.2d 462, 465 (2 Cir. 1954); Reeves v. Beardall, 316 U.S. 283, 285 (1942); cf. Kuly v. White Motor Co., 174 F.2d 742, 744 (6 Cir. 1949); Magliaro v. Modern Homes, Inc., 115 N.J.L. 151 (E. & A. 1935).
Nor need we stop to decide whether the parties can by their consent transform a non-appealable interlocutory judgment (if this be such) into an appealable final judgment.
*233 We pass these questions; they have not been raised by counsel. Here, as stated, the borough's attorney consented to the entry of the judgment as a final judgment, and the borough then paid the plaintiff the moneys due on it. The borough thereby waived the right, of which its counsel was cognizant, to have entered the usual revisable interlocutory order; and it cannot now be heard to say that the moneys so paid by it may be recovered back by it on the ground that this was such an order. For such relief as it is entitled to, it must look to R.R. 4:62 (as to which see Point III, infra).
A waiver has often been defined in our cases as a voluntary relinquishment of a known right. See in general Long v. Board of Chosen Freeholders, Hudson County, 10 N.J. 380, 386 (1952). While this definition has been subjected to criticism, 3 Williston, Contracts (rev. ed.), §§ 678, 679, Ewart, Waiver Distributed (1917), nevertheless we think that under the circumstances here the doctrine of waiver obtains. Cf. Williston, Id., § 679, par. 9; cf., too, 31 C.J.S., Estoppel, § 120, p. 384; 19 Am. Jur. 715.

II.

THE EFFECT OF A FINAL JUDGMENT UPON A REVISABLE CLAIM
The borough contends that the summary judgment, though final, is but an integration of plaintiff's claim for 90% of the last six estimates which were subject to revision on the rendition of Booz' final certificate. And hence, the argument runs, this judgment is itself subject to revision on the rendition of the ultimate final judgment in this case, the function of which will be (so the borough says) to pass not only upon the remaining 10% of these estimates, but also in a definitive manner upon the 90% thereof already adjudicated upon.
In support of its position, the borough points out that the summary judgment refers particularly to each of the six counts of the complaint upon which it passes, and that in *234 each count is set forth verbatim the provision of the contract, above quoted:
"All prior partial estimates and payments shall be subject to correction in the final estimates and payments."
It points out, too, that the plaintiff's brief on the motion for summary judgment, referring to this provision of the contract, seems to indicate that the judgment would not bar any bona fide counterclaim. More significant than this, when the motion first came on for argument before the trial court, plaintiff's attorney, opposing a two weeks' continuance of the motion, said:
"The contract itself provides that all prior partial estimates and payments shall be subject to correction in the final estimate and payments. So that the payment of this [i.e., the sum claimed on the motion for summary judgment] is not conclusive on the Borough, as to the particular items in them. The merits of the litigation are not disturbed. They are merely forced to perform their contract of making certified partial payments for the financing of the job.
* * * The contract provides for the making of an approximate estimate. It particularly provides for inaccuracies, that inaccuracies may be corrected in the final certificate. * * * I say that nothing this report [the report of Miller] would show as to inaccuracies would be ruled upon this morning. It would only be relevant on an ultimate determination of the case, which is not at all prejudiced by the result of this motion."
So, on the one hand, we have claims (those adjudicated upon in the summary judgment) which were (leaving the judgment aside) revisable in amount. On the other hand, taking into account the implications of R.R. 4:55-2, we have a judgment which itself is not "subject to revision" unless it be opened up pursuant to R.R. 4:62. What, then, is the effect of a judgment, not revisable, upon claims that are revisable?
We need not cut that knot here, for the borough's contentions are met with a waiver quite like that encountered under Point I. Two weeks after the plaintiff made the representations (above-quoted) on opposing the continuance, the borough, after a study of Miller's report, gave *235 its consent in open court to the judgment. Plaintiff on the oral argument before us claimed that this summary judgment  which it said was at first intended by it to be merely of a revisable interlocutory character  was, by agreement of counsel reached in the two-week period, bolted down (so to speak) as a final judgment.
In giving its consent to such a judgment, the borough, by implication we think, stipulated that the claims integrated in the judgment, were, to the extent of the amount of the judgment, not to be revisable. In other words the borough, by its agreement, waived any tentative aspects of the judgment, giving up any right it had to revise the same except through proceedings to open it up under R.R. 4:62.
The difference between the borough's payment of this judgment and its payment of prior estimates is that here payment was made in conjunction with a consent to a judgment which had upon it the stamp of finality.

III.

WHETHER THE JUDGMENT SHOULD BE OPENED; THE EXTENT OF THE JUDGMENT
Concluding, then, that the summary judgment is to be treated as though it were in all its aspects a final judgment, Restatement of Judgments § 41, we reach the question whether the court erred in refusing to open it up under R.R. 4:62-2.
It cannot be pretended that the borough now offers to produce any evidence that it could not have discovered in the exercise of due diligence before the entry of the judgment; nor  so far as the affidavits on the motion to open go  any evidence of fraud sufficient to warrant the vacation of the judgment.
Claims of mistake or excusable neglect (R.R. 4:62-2) must be considered in the light of circumstances, including the borough counsel's study of the Miller report, their consent to the judgment and the payment of the judgment debt. *236 With these circumstances in view, we cannot say that the trial court committed manifest error (536 Broad St. Corp. v. Valco Mortgage Co., Inc., 7 N.J. Super. 147 (App. Div. 1950), approved and appeal dismissed 5 N.J. 393 (1950); Smith v. Smith, 17 N.J. Super. 128 (App. Div. 1951)) in refusing, in the exercise of its discretion, to open the judgment because of mistake or excusable neglect with respect to 90% of the last six estimates.
In a matter such as this, the law looks to the equities of the circumstances. Shammas v. Shammas, 9 N.J. 321, 326 (1952). There is sufficient basis in the particular situation here to support the trial court's ruling, and we therefore need not go further and involve ourselves generally in the question as to when a consent judgment may be vacated. Reilly v. Mahoney, 129 N.J. Eq. 599 (Ch. 1941); but cf. Fidelity Union Trust Co. v. Union Cemetery Ass'n, 136 N.J. Eq. 15, 25 (Ch. 1944), affirmed 137 N.J. Eq. 456 (E. & A. 1945); McArthur v. Thompson, 140 Neb. 408, 299 N.W. 519, 139 A.L.R. 421, 422, 436.
However, the judgment does not pass upon the estimates prior to the last six. It, with some precision, we think, was directed against only 90% of the materials and work furnished, as stated in the six estimates. The mere fact that these estimates contain figures showing the very large quantity and value of materials and work appearing in the earlier estimates (so as to set forth cumulatively the total furnished to date), does not indicate any real intention to constitute the judgment an adjudication with respect to the prior work and materials. An adjudication will not be extended beyond its fair import.

IV.

AMENDMENTS TO THE PLEADINGS; RES JUDICATA
The only problem requiring attention here is whether the issues raised by the proposed amendments are by reason of the summary judgment res judicata. The plaintiff seeks *237 to amend its answer so as to add five paragraphs of separate defenses and six counts containing counterclaims and cross-claims. The court permitted the borough to add the separate defense appearing in paragraph 1 and the cross-claims appearing in the fourth and fifth counts; and the borough cannot complain of that. But the court refused to allow the other amendments, except in certain perhaps minor respects; these amendments we shall consider.
The proposed separate defenses set up in paragraphs 2 and 3 raise the question whether the 10% reserved as to all estimates (after payment of the 90%) can be applied toward an adjustment of any and all of the estimates. We deal with these defenses, first, insofar as they affect 90% of the items set forth in the last six estimates and, second, insofar as they affect the remaining 10% of these estimates and 100% of all other estimates.
The first matter is controlled by the elementary proposition that a final judgment on any cause of action precludes, so far as that cause goes, any litigation between the parties and their privies as to every defense which was or might have been offered to defeat the cause. City of Paterson v. Baker, 51 N.J. Eq. 49, 53 (Ch. 1893); Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 707 (E. & A. 1948); Restatement of Judgments § 47, comment a. Hence, the summary judgment here is clearly a finality as to 90% of each of the items set forth in each of the last six estimates, and it bars any litigation over any defense which would in any way unsettle that matter. In this respect the trial court committed no error.
The remaining question is whether that judgment affects either the 10% reserved as to the last six estimates or any part of the other estimates. Plainly the judgment did not obligate the borough to pay the whole of the last six estimates, 90% at the time of the summary judgment and 10% at some later time; it dealt only with the 90%, leaving all questions as to the borough's liability for that 10% wholly open. As to these estimates the area of adjustment was narrowed to the 10%.
*238 But what of the doctrine of collateral estoppel? Preliminarily it should be noticed (and we need not spell it out) that the evidence needed to sustain the cause of action for the 90% would not sustain the cause of action for the 10%; and hence, for the purposes of the doctrine stated, the two causes of action are to be regarded as separate. Templeton v. Scudder, 16 N.J. Super. 576 (App. Div. 1951); 50 C.J.S., Judgments, § 648, p. 88; cf. Restatement of Judgments § 61. A fortiori, causes of action with respect to estimates other than the last six, are separate from those resting on the six estimates.
The pertinent principle of collateral estoppel is entirely settled. Insofar as the litigation deals with causes of action separate from that adjudicated upon, the judgment is not conclusive between the parties upon any question which has not been actually litigated and determined by the judgment. City of Paterson v. Baker, 51 N.J. Eq. 49, 54 (Ch. 1893), supra; Miller v. Stieglitz, 113 N.J.L. 40, 44 (E. & A. 1934); Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 707 (E. & A. 1948), supra; Restatement of Judgments §§ 68, 70. Here the questions raised by paragraphs 2 and 3 of the proposed separate defenses were not actually litigated and determined by the judgment.
Hence we conclude that these amendments seeking to add paragraphs 2 and 3 should have been permitted, except as the defenses affect 90% of the last six estimates. The trial court erred in refusing to allow the amendments to the extent stated.
In other words, the 10% reserved as to each of the last six estimates may be applied toward an adjustment of the estimate as to which it was reserved, so long as the adjustment does not affect the 90% adjudicated to be due thereon. Furthermore, with respect to all estimates prior to the last six estimates, the parties are remitted to their full rights under the contracts just as though no judgment had been entered.
We have given some thought to certain of the complications that may arise in the application of this ruling, but have *239 concluded that rather than try to anticipate them now, it would be better to leave it to the trial judge to work them out equitably.
Our decision as to the separate defenses in paragraphs 2 and 3 applies in principle to those stated in paragraphs 4 and 5 and also to the proposed counterclaims set forth in the first and second counts, and we therefore will not stop to spell the points out. Drawing a dividing line as we have done above, we may say that these two separate defenses and two counterclaims charge: first, that 90% of the items set forth in the last six estimates are (to put it very generally), all or in part, not due; and, second, that the remaining 10% of these estimates and 100% of all other estimates are, all or in part, not due. As to the first matter, the judgment does preclude further litigation; as to the second, it does not.
Lastly, we come to the proposed cross-claims against Booz set forth in the second and third counts and the proposed counterclaim against the plaintiff set forth in the sixth count. It follows from what has been said above, that with respect to these cross-claims and counterclaim, the summary judgment is not res judicata as to any of the estimates except perhaps as to 90% of the last six estimates.
But here we are faced with two interesting questions as to whether the issues raised by these two cross-claims and the counterclaim are res judicata even with respect to 90% of the last six estimates. These questions, which have not been considered by counsel, may be briefly indicated as follows:
1. The first question is raised by the proposed cross-claims against Booz set forth in the second and third counts, charging him with having caused the borough to pay the plaintiff moneys not due it. On the one hand it may be asked whether the borough  which has with its consent been adjudged to be liable to the plaintiff to a certain extent, as above stated, on the basis of Booz's certificates  can now take the position (apparently) that by reason of the alleged falsity of Booz's certificates he caused the borough to pay plaintiff moneys which are not due it even to that extent. On the other hand it may be asked whether a judgment against the borough can be said to be res judicata as to a claim by the borough against Booz, who was not a party to the judgment, cf. Restatement of Judgments *240 § 94, 99; or whether Booz has changed his position to his detriment by reason of the plaintiff's judgments against the borough, so as to estop the borough from asserting its cross-claims against him? Cf. Fidelity Union Trust Co. v. Chausmer, 120 N.J.L. 208 (E. & A. 1938); 31 C.J.S., Estoppel, § 118, p. 379.
2. The second question is raised by the counterclaim on the warranty set forth in the sixth count under which the plaintiff represented and warranted "(c) that such temporary and permanent Work required by the Contract Documents as is to be done by him can be satisfactorily constructed and used for the purpose for which it is intended, and that such construction will not injure any person or damage any property * * *."
On the one hand it may be asked whether this counterclaim is not based on a cause of action different from that adjudicated upon by the plaintiff's summary judgment and whether therefore the judgment bars only questions actually litigated and determined thereby. Was the judgment merely an adjudication that 90% of so many units of material and work had been furnished, having a certain value? If so, does this warranty having to do with the use of the work and the injury to property raise a separate cause of action and go entirely beyond the questions adjudicated upon? Restatement of Judgments § 58b and 58c; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 27 (1942); cf. 2 Black on Judgments (2nd ed.), §§ 767 to 769; 49 A.L.R. 553; 83 A.L.R. 642. See the interesting decision, The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187 (2 Cir., 1944); cf. Restatement of Judgments § 68p, as amended 1948 Supp. Note that this State has deliberately not adopted Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., compelling a defendant (generally speaking) to interpose all counterclaims arising out of the transaction that is the subject matter of the plaintiff's claim.
On the other hand it may be asked whether our practice as a matter of common law is coming around to a position requiring the joinder in the action of all counterclaims that are a constituent part of the "entire controversy" between the plaintiff and the defendant and whether this joinder is compulsory under penalty of forfeiture. Schnitzer, 9 Rutgers L. Rev. 307, 334 (1954); Schnitzer and Wildstein, N.J. Rules Serv. A IV-334; cf. Mechanical Devices Co. v. General Builders, 15 N.J. 566 (1954), reversing 27 N.J. Super. 501 (App. Div. 1953); Leslie v. Mollica, 236 Mich. 610, 211 N.W. 267, 49 A.L.R. 551; 83 A.L.R. 642; Ajamian v. Schlanger, 14 N.J. 483 (1954); Massari v. Einsiedler, 6 N.J. 303 (1951), dealing with a counterclaim in the nature of an equitable defense (Restatement of Judgments § 66c, cf. § 58).
The case will be set down for argument of these two questions on May 31 upon typewritten briefs, the borough's brief to be filed and served by May 10 and the briefs of plaintiff and Booz to be filed and served by May 20.
*241 This already complicated case (some 2300 pages of depositions have been taken) has been much further complicated by the entry, through consent, of the split final judgment. However, the plaintiff and the borough have brought upon themselves this embarrassment. If the case is to be tried to a jury, the jury may, by the use of a special verdict, R.R. 4:50-1, be somewhat aided in its task; but this is a matter which we of course leave to the discretion of the trial court.
Modified. No costs.