53 N.J. Super. 539 (1959)
148 A.2d 78
HENRY E. RUSSELL, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF TENAFLY, ROBERT J. NIERO, BUILDING INSPECTOR OF THE BOROUGH OF TENAFLY, AND HENRY O. POND, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1958.
Decided January 16, 1959.
*540 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. George G. Tennant, Jr., argued the cause for appellant.
Mr. George A. Brown argued the cause for respondent Board of Adjustment of the Borough of Tenafly (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. Howard E. Corbett argued the cause for respondent Henry O. Pond (Messrs. Winne & Banta, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff appeals from a final judgment of the Law Division dismissing his complaint in lieu of prerogative writ, and ordering judgment in favor of the defendants.
In the fall of 1936 defendant Pond prepared and submitted to the Tenafly Planning Board for its approval a map for the subdivision of a portion of a ten-acre tract then owned by his mother. This map delineated, inter alia, three building lots which were cast from the ten-acre tract and designated thereon as Lots 10, 11 and 12 in Block 189. These building lots, as depicted on that map, fronted on Serpentine Road. The map depicts, as well, a building line for each of the designated lots which is located along a line *541 set back from Serpentine Road a distance of 25 feet. Pond's power to deal with these lands was derived from a power of attorney from his mother under which he managed her affairs. The planning board approved this subdivision map on December 3, 1936, and on December 8, 1936 it was approved by the borough council. At the time the aforesaid map was submitted, Pond was an acting secretary for the planning board. There is no charge of fraud.
At the death of Pond's mother in 1938 she devised the entire tract to Pond. Some time after Pond obtained title he defaulted in the payment of real estate taxes due to the municipality and in settlement of the municipal lien he conveyed the tract to the municipality, except for the three building lots referred to above.
In 1944 or 1945 title to the tract theretofore conveyed to the municipality was acquired by persons named Haskell. In 1949 or 1950 Pond and the Haskells exchanged deeds for various segments of property. As a result of these exchanges Pond continued his ownership of Lot 10 and acquired, in addition, a ten-foot strip of land (known and designated as Lot 10A), contiguous to the southerly line thereof. Lots 11 and 12 were combined and replotted to make a newly designated Lot 11. This latter lot, however, does not form any part in the consideration of the present case. The perimeter of lots 10 and 10A combined measures approximately 100 feet along the westerly line (bordering Serpentine Road), approximately 140 feet along the northerly leg, approximately 84 feet along the southerly leg and approximately 50 feet along the rear or easterly line.
Under the 1934 zoning ordinance and the amendments thereto the set-back requirement for new buildings in the section of the municipality with which we are here concerned was the average set-back line of existing buildings on the same side of the street between intersections, except where set-back lines had been established prior to 1934. In no event were such set-backs required to be more than 75 feet from the street line. It is agreed that the property in question is bound by a 75-foot set-back requirement.
*542 In 1953 Pond entered into an agreement to sell lots 10 and 10A, covenanting, in part, that the property could be used for the purpose of erecting a single-family dwelling. In the spring of 1953 Pond and his purchasers applied for and obtained from the building inspector of the borough a permit to construct a house on lots 10 and 10A, set back 25 feet from the easterly line of Serpentine Road. Thereafter plaintiff sought to prevent the construction of the house and appealed the issuance of the building permit to the board of adjustment. The board dismissed his appeal and plaintiff appealed that decision to the Law Division (Docket L-8353-52). The matter was heard on a stipulation of facts. The trial judge determined that the planning board had no power in 1936 to establish a set-back of 25 feet, and set aside the issuance of the building permit. Pond did not appeal from the ensuing judgment.
In 1955 Pond petitioned the board of adjustment for a variance from the limiting schedule of the ordinance, both as to set-back and minimum area requirements, upon the ground of undue hardship. R.S. 40:55-39(c). On September 10, 1956 the board denied that petition, stating that although Pond "has presented evidence of an extraordinary condition of the property and undue hardship," he had "failed to adduce substantial evidence that the variance can be granted without substantial detriment to the public good or substantial impairment of the intent and plan of the zone plan and ordinance." Pond appealed the denial of his petition to the Law Division by an action in lieu of prerogative writs (Docket L-1129-56-P.W.). The present plaintiff intervened as a defendant in that action.
The pretrial order entered in that case discloses that the board of adjustment contended that its denial was in all respects valid, there being "no showing of hardship justifying the granting of the variance." Further, that the "intervenor will contend that there was no proof before the Bd of Adjustment sufficient to justify the Bd of Adjustment in granting the requested variance; that there was no showing that if the variance were granted it could be done without substantial *543 detriment to the public good or impairment of the intent of the zone plan and ordinance; that no showing of hardship was made by the plaintiff; that any hardship now complained of was created by the plf himself in 1941 in making a subdivision of his property and conveying the larger piece thereof; that the complaint does not set forth a valid cause of action." (Emphasis supplied.)
The trial judge filed an opinion affirming the decision of the board. Reviewing the record, he agreed with the board's finding that Pond had failed to show that the variance could be granted without substantial detriment to the public good or substantial impairment of the plan and intent of the zone plan and ordinance. He further found that Pond, "with full knowledge of the provisions of the various zoning ordinances of the borough, placed himself by his own act in the position in which he now finds himself and is estopped to complain."
The judgment as entered against plaintiff recited, inter alia:
"* * * the Court having filed its written opinion setting forth its findings of fact and conclusions of law, and determining that (1) the plaintiff [Pond] has failed to adduce evidence that the variance sought by the plaintiff could be granted without substantial detriment to the public good or substantial impairment of the intent and plan of the zone plan and ordinance of the Borough of Tenafly, and (2) the plaintiff, with full knowledge of the provisions of the various zoning ordinances of the Borough of Tenafly, has placed himself by his own act in the position in which he now finds himself and is estopped to complain, and (3) the relief sought by the plaintiff in his complaint should be denied."
Pond did not appeal from that judgment.
In April 1957 Pond again applied to the building inspector for a permit to erect a one-family dwelling on the premises in question. His application was denied. He appealed to the board of adjustment and again sought a variance from the requirements of the zoning ordinance upon the ground of undue hardship. The differences between this application and the prior application are (1) that Pond sought *544 permission to erect a building along a 30-foot set-back line instead of the 25-foot line previously proposed, and (2) the ground floor area of the building would be somewhat less than before.
At the new hearing before the board, Pond presented the testimony of a real estate agent to show that the variance would not have the prohibited deleterious effect on the surrounding area or on the zoning plan. The testimony indicated that the contemplated structure harmonized with others in the neighborhood, and the 30-foot set-back would be approximately the same as that of the houses on the opposite side of the street. Russell, as an adjoining property owner, objected to the board's granting of the variance and moved to dismiss Pond's application on the grounds that the judgment referred to above (Docket L-1129-56-P.W.) was res judicata in two respects: (1) Pond had had his opportunity to show what he now seeks to prove, the case went to judgment, he lost and he cannot now reopen the same question; and (2) Judge Broadhurst's finding on the estoppel point is also conclusive of that issue and bars Pond's new application. Plaintiff also urged that, independent of res judicata, it must be found that Pond created the present situation and therefore cannot seek to relieve himself from it by a "hardship" variance. The board denied Russell's motion, granted the variance and directed the issuance of a building permit. It found that Pond's application differed from his prior one, so that the matter was not res judicata; that "the strict application of the provisions of the zoning ordinance of the Borough of Tenafly to the premises in question results in peculiar and exceptional practical difficulties to the owner of the same in that under such strict application the premises cannot be devoted to residential use for which they are zoned, and * * * that there is credible evidence that the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance of the Borough of Tenafly, * * *." The two applications were only colorably different. The *545 distinction (noted above) between the two is so insubstantial as to make the second, in effect, a resubmission of the initial application. Compare, Tzeses v. Bd. of Trustees of Village of South Orange, 22 N.J. Super. 45 (App. Div. 1952), certification denied Rush v. Board of Adjustment of Village of South Orange, 11 N.J. 327 (1953).
Plaintiff appealed from the decision by filing an action in lieu of prerogative writ in the Law Division. He there contended, inter alia, that Pond was precluded from obtaining the relief sought because the matter was res judicata by reason of the prior Law Division judgment. Further, that Pond was estopped from complaining of his situation because he had created it himself. Accordingly, he urged, the board of adjustment erred in denying plaintiff's motion for dismissal. At the hearing the trial court declined to admit into evidence the record of the prior proceedings (Docket L-1129-56-P.W.), offered in support of the issues of res judicata and collateral estoppel, and decided against plaintiff's contention that either of these doctrines was applicable. A judgment of involuntary dismissal against plaintiff and a judgment in favor of the defendants was thereupon entered. It is from the judgment so entered that plaintiff prosecutes this appeal.
Plaintiff argues, inter alia, that the trial court erred both in refusing to admit the record of the prior proceedings as an exhibit and in concluding that the prior judgment is not a bar to the relief sought. He urges that the judgment in Pond v. Board of Adjustment, (Docket L-1129-56-P.W.) is conclusive on the issue of undue hardship and that this result eventuates under either the doctrine of res judicata or collateral estoppel by judgment, depending upon whether the present suit is for the same cause of action as the prior suit. Public Service Electric and Gas Co. v. Waldroup, 38 N.J. Super. 419, 425-426 (App. Div. 1955); Middlesex Concrete Products & Excavating Corp. v. Borough of Carteret, 35 N.J. Super. 226, 236-238 (App. Div. 1955).
We need not concern ourselves with the distinction between the pleas of res judicata and collateral estoppel, *546 since if the fact or issue now sought to be litigated has once been litigated and adjudicated between the parties or their privies, that is sufficient to raise a bar to Pond's action under either theory. Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59 (1958); Public Service Electric and Gas Co. v. Waldroup, supra; Middlesex Concrete Products & Excavating Corp. v. Borough of Carteret, supra.
The solution to the issue of the scope of the bar of the prior judgment must be predicated upon a study of the entire record of the prior cause in order to ascertain what determinations underlie that judgment. Nystrom v. Pennycook, 29 N.J. Super. 456 (App. Div. 1954). Such examination discloses that the pretrial order raised the issue of Pond's estoppel to urge undue hardship. The preamble of the judgment discloses that the trial court had made findings of fact and conclusions of law and had determined that "the plaintiff, with full knowledge of the provisions of the various zoning ordinances of the Borough of Tenafly, has placed himself by his own act in the position in which he now finds himself and is estopped to complain."
Defendants urge, however, that any conclusion of the trial court in the prior litigation was (1) in a different action and hence the rule of res judicata does not apply, and (2) that the reference to estoppel was dictum and hence not binding.
Regardless of whether the relief sought was identical in the two applications, both were predicated upon N.J.S.A. 40:55-39(c). Admittedly, for Pond to succeed it was incumbent upon him to prove that the strict application of the ordinance would result in exceptional and undue hardship upon him. We are not here concerned with merely an adjudication of the planning board, but rather with a final judgment of the Superior Court. Cases where there was a reapplication made to a planning board, absent intervening adjudication by a court of record, are not apposite. Since the same issue, i.e., exceptional or undue hardship, was before the court in both instances, the doctrine of estoppel applies.
*547 Where a judgment is based upon matters litigated as alternative grounds, a final judgment is determinative on both grounds, although either alone would have been sufficient to sustain the judgment. Restatement, Judgments, § 68, comment (k), p. 307 (1942); United States v. Title Insurance & Trust Co., 265 U.S. 472, 44 S.Ct. 621, 68 L.Ed. 1110 (1924); 30A Am. Jur., Judgments, § 381, p. 430 (1958).
We hold, therefore, that Pond was estopped from relitigating the issue of hardship, that issue having been previously adjudicated. The trial court erred in not admitting into evidence the record of the prior proceedings, since that record was both material and relevant to the issue.
Reversed.