56 N.J. Super. 135 (1959)
151 A.2d 540
BOROUGH OF LEONIA, PLAINTIFF-APPELLANT,
v.
BOROUGH OF FORT LEE, DEFENDANT-RESPONDENT, AND MAE BLAUVELT, EMMA MERKLE, FORTUNATO DIBARTOLO, VINCENT DIBARTOLO AND ROSE DIBARTOLO, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1959.
Decided June 1, 1959.
*137 Before Judges GOLDMANN, CONFORD and HANEMAN.
*138 Mr. Bruce H. Losche argued the cause for appellant (Messrs. Westervelt & Leslie, attorneys; Mr. George F. Losche, of counsel).
Mr. William V. Breslin argued the cause for respondents (Mr. Breslin, attorney for respondent Borough of Fort Lee; Mr. Milton T. Lasher, attorney for intervenors-respondents Blauvelt and Merkle (Mr. William A. Fasolo, of counsel); Messrs. Monaghan and Monaghan, attorneys for intervenors-respondents DiBartolo).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Borough of Leonia appeals from a judgment of the Superior Court, Law Division, holding valid a 1958 amendment to the zoning ordinance of defendant Borough of Fort Lee which rezoned from residential to business use a 100'-deep tract fronting on the west side of Bergen Boulevard. This thoroughfare constitutes State Highway 46 and part of U.S. Routes 1, 9 and 9W. It is one of the most heavily traveled highways in the State, being the main artery from the George Washington Bridge to the New Jersey Turnpike, and also the normal route for traffic heading south on U.S. Route 1. Leonia borders the tract in question on the west. This is the third suit in two years involving Fort Lee's attempted rezoning of the property. A brief description of these actions is necessary to a better understanding of the present appeal.

I.
On July 5, 1956 Fort Lee adopted ordinance No. 1005 amending its 1921 zoning ordinance so as to rezone the tract here involved (known as Lots 61 through 90, Block 154, City Atlas) from R-2 Residential to C-1 Central Business, the rear 10' bordering directly upon Leonia to be reserved as a buffer zone and planted with shrubs and trees. Leonia brought a proceeding in lieu of prerogative *139 writs to set the ordinance aside. Its right to maintain that action or those that followed is not questioned. Cf. Cresskill v. Dumont, 15 N.J. 238 (1954). The matter proceeded to trial before Superior Court Judge Waesche. After some of plaintiff's witnesses had testified it was suggested that there might be a common meeting ground for agreement. Following a discussion in which the mayor of Leonia, its then counsel, and present counsel for Fort Lee participated, it was agreed that a judgment be entered which would set aside the ordinance in part. The compromise effected was that all property along the ramp leading up from Main Street be returned to residential use, and the remainder of the tract to the south be zoned for business. Judge Waesche approved the settlement and subsequently entered judgment on May 22, 1957, holding that Lots 78 through 90 were properly zoned as C-1 Central Business and Lots 61 through 77 were not, and setting aside ordinance No. 1005 to that extent. Fort Lee's counsel having represented to the court that the municipality was willing to introduce a zoning amendment restricting the lots approved for business against use for truck-trailer camps, diners and motels, the judgment further ordered that Fort Lee cause such an ordinance to be introduced. Counsel for both municipalities consented to the form of the judgment (hereinafter called the first judgment).
In an apparent effort to carry out the terms of the judgment, the governing body of Fort Lee on August 7, 1957 adopted ordinance No. 1016, amending and supplementing ordinance No. 1005 to prohibit truck-trailer camps, diners, motels and junk yards on Lots 61 to 90, inclusive, and in addition prohibiting gasoline service stations, new or used vehicle sales business, automobile repair business and parking lots on Lots 61 through 71 (these fronted directly on the ramp). Leonia at once attacked the ordinance by an in lieu proceeding, claiming that ordinance No. 1016 constituted spot zoning, was passed in disregard of its direct effect on the contiguous residential area in Leonia, and was *140 not a bona fide exercise of the legislative zoning power. The trial resulted in a judgment (hereinafter the second judgment) entered by Judge Waesche on March 12, 1958, setting aside the ordinance "for lack of clarity and for indefiniteness," but "without prejudice to the right of the Borough of Fort Lee to adopt such ordinance as it deems advisable under all the circumstances."
Fort Lee had in the meantime, on March 3, 1958, moved to vacate the original consent judgment. Its counsel filed an affidavit alleging that he had misunderstood the location of the dividing line between the business and residential zones fixed by the first judgment, and that property owners in both Fort Lee and Leonia had complained that the judgment adversely affected their interests and they had not had an opportunity to be heard. As a result of a conference between counsel and Judge Waesche Fort Lee's attorney agreed that the municipality would pass a zoning amendment in order that all issues, including the interests of the property owners along the ramp, could properly be heard and adjudicated by the court. (The result was the adoption of ordinance No. 1016.) The motion to vacate was opposed by counsel for Leonia whose affidavit stated that the settlement had been thoroughly understood by everyone. The motion was denied.
At the trial of the present (third) action counsel for both sides agreed that Judge Waesche had denied the motion because he saw no reason why the consent judgment should have any effect upon subsequent proceedings. The question of the application of res judicata had come up in the course of the argument on the motion; the judge had been of the opinion that the doctrine was not applicable and that the question did not even merit consideration. From this it is clear beyond any doubt that Leonia understood that Judge Waesche considered the first judgment inoperative as a bar to any future action and, further, that the municipality acquiesced in this decision until the trial of the third action when, as noted below, it made a half-hearted attempt *141 to raise the issue. That such was the understanding of the court and counsel is made manifest by the concluding provision of the second judgment, entered the same day as the order denying the motion to vacate, setting aside ordinance No. 1016 without prejudice to the right of Fort Lee "to adopt such ordinance as it deems advisable under all the circumstances."
On May 7, 1958, two months after the entry of the second judgment, the governing body of Fort Lee adopted ordinance No. 1038 rezoning the tract in question (Lots 61 through 90) from R-2 Residential to C-1 Central Business. Trucktrailer camps, diners, motels and junk yards were prohibited throughout the entire tract; additionally, gasoline service stations, new or used vehicle sales business, automobile repair business and parking lots were prohibited in Lots 61 through 71. The rear 10' of the rezoned tract was reserved as a buffer zone, to be planted with shrubs or trees. Ordinances Nos. 1005 and 1016 were repealed. The new enactment obviously combined the provisions of the repealed ordinances.
Plaintiff then instituted its third action claiming, as before, that ordinance No. 1038 constituted spot zoning, did not take into consideration the abutting multiple-family dwelling zone in Leonia, was not a bona fide exercise of the municipal zoning power and, further, contravened the terms of the first judgment. Fort Lee answered, alleging that the ordinance was a proper exercise of delegated legislative powers in accordance with a comprehensive scheme and zoning plan, and that the issue had not been tried on its merits, previous proceedings being the result of settlement and/or misunderstanding. Respondents Blauvelt, Merkle and the DiBartolos, owners of property in the rezoned tract, were permitted to intervene. The pretrial order sets out plaintiff's contentions as being, merely, that the ordinance under review "is illegal and void in that it represents spot zoning and is not in accordance with any comprehensive plan." No further issues are mentioned. After trial and argument *142 Judge Malech, temporarily assigned to the Superior Court, Law Division, concluded that the ordinance was a valid exercise of the zoning power and that the first judgment, in view of the stipulation of counsel (of which more hereafter), was without prejudice to the rights of the parties and no bar. An accordant judgment was entered November 26, 1958 declaring ordinance No. 1038 valid and dismissing the complaint without costs.

II.
On this appeal plaintiff contends that (1) the first judgment of May 22, 1957 is dispositive of this litigation, the latest amendatory ordinance being only colorably different from original ordinance No. 1005, citing Russell v. Tenafly Bd. of Adjustment, 53 N.J. Super. 539 (App. Div. 1959); (2) the fact that the first judgment was entered by consent does not detract from its efficacy; and (3) ordinance No. 1038 should be set aside insofar as it places Lots 61 through 77 in a business zone, and this for the reason that comprehensive planning required the governing body of Fort Lee to give consideration to the adjoining, residentialzoned properties in Leonia. We find Leonia's argument without merit, for several reasons.
As for the judgment of May 22, 1957, we consider that it has no bearing on the present action in light of the attendant circumstances of the case. In the first place, the same counsel who had represented plaintiff in the initial litigation expressly agreed before Judge Malech to waive the issue of the possible conclusiveness of the first judgment on the merits of the present action. The existence of the first judgment had occasionally been mentioned throughout the trial, but plaintiff's counsel never took the firm position that it was a bar. Finally, when Judge Malech indicated that the matter should perhaps be referred to Judge Waesche for him to deal with the effect of the first judgment, counsel for Leonia declared that he was perfectly willing for the *143 court to decide the matter. The attorney for Fort Lee then stated that counsel "will agree * * * not to raise that point [the effect of the prior judgment] so that there is no chance of this court being imposed upon," to which plaintiff's attorney replied: "I am willing to stipulate on the record that you [Judge Malech] follow through and decide this case that there be no reference to Judge Waesche or anybody else." The trial judge remarked that the question of the effect of the prior judgment "has now cleared itself," and proceeded to hold ordinance No. 1038 valid.
Plaintiff should be bound by the representations and stipulations made by its counsel at the trial, and should not be permitted upon appeal to alter its interpretation of the facts upon which the issue was framed and which had legitimately been relied upon by defendant and the trial court in its conduct of the cause. State v. Atlantic City Electric Co., 23 N.J. 259, 264 (1957). Cf. Monaco v. Jackson Engineering Co., Inc., 45 N.J. Super. 313 (App. Div. 1957). This is not a situation where some valuable right of a party was unjustly sacrificed without reason or authority, in which case other considerations might apply. The express stipulation that the trial judge proceed to decide the validity of the ordinance on its merits and upon the basis of the proofs adduced, should be enforced.
Secondly, the effect of the first judgment was not raised in the pretrial order and was therefore not properly before the trial court for consideration. R.R. 4:29-1(b) (7), part of the pretrial conference rule, provides that the pretrial order shall specifically recite "A specification of the legal issues raised by the pleadings as amended or to be amended which are to be determined at the trial." The purpose of the order is, of course, to declare and limit the issues to be tried so that the matter may be disposed of in orderly fashion and without surprise. It supersedes all pleadings inconsistent with it and controls the subsequent course of the action until modified. Unless the issue is raised by the pretrial order, it has no standing at the trial. R.R. *144 4:29-1; Jenkins v. Devine Foods, Inc., 3 N.J. 450, 456 (1950); Shaw v. Calgon, Inc., 35 N.J. Super. 319, 327 (App. Div. 1955); Van Corp. v. Mayor, etc., of Ridgefield, 41 N.J. Super. 74, 80 (App. Div. 1956). The pretrial order was never amended, nor was there any suggestion that this be done.
Thirdly, the first judgment was entered by consent and purported to adjudicate that zoning ordinance No. 1005 was partly invalid. There is no proof whatsoever that counsel for Fort Lee had any authority to enter into a binding consent judgment on behalf of his municipality, the effect of which was to declare a portion of a properly enacted municipal ordinance invalid. Edelstein v. Asbury Park, 51 N.J. Super. 368, 388-389 (App. Div. 1958); 38 Am. Jur., Municipal Corporations, § 727, p. 429 (1941).
Fourthly, there is the consideration that a zoning ordinance is the solemn legislative act of a municipality acting through its governing body, and directly or indirectly affecting all residents and taxpayers in the community. It can be enacted only after introduction, submission to and report by the planning board, public hearing, and a formal vote of adoption, accompanied by the necessary publications. N.J.S.A. 40:55-30, 33, 34. The court can only determine whether the ordinance is valid or invalid, and may not determine in behalf of the governing body what the zoning pattern should be. A municipal attorney cannot, in an action attacking the validity of a zoning ordinance, stipulate that all or any part of it is invalid, thereby binding the municipality or any of its citizens or taxpayers who have the status of parties in any later proceeding in which the question of the validity of the ordinance comes into issue.
The question of whether the first judgment was subject only to direct attack and could not be impeached in a collateral proceeding is not raised, and we do not pass on it. Leonia apparently recognized that its claim of res judicata was of no value and could not survive a direct attack by motion to vacate under R.R. 4:62-2. If this aspect of the *145 matter occurred to its then counsel, he undoubtedly appreciated that it would be futile to force Fort Lee to take other steps which could only result in further delay and, inevitably, in the setting aside of the first judgment. This probably explains the stipulation made to the trial court that it proceed to determine the matter on the merits.
The merits of this case are readily disposed of. The rezoning of the tract in question from residential to business use was clearly a reasonable and supportable legislative determination in the light of the proofs. Leonia's expert testified that the property should be zoned for residence. Like the trial court, we are not at all impressed by his testimony, and his statement that the matter was not even debatable cannot be taken seriously. The tremendous volume of traffic, including a great number of trucks, makes the area in question undesirable for residential use. The testimony was that the average daily vehicle count in 1957 was 52,350, with a peak hourly count of 2,600 vehicles going in one direction. Bergen Boulevard is extremely difficult and dangerous to cross, particularly for children in the neighborhood. The highway traffic creates noise, dust, fumes and vibrations. It has already resulted in lowering the price of land for residential purposes. The present residential use is a relic of a by-gone day; areas nearby are largely devoted to business. The adverse effect of the rezoning on the Leonia property, if any, is inevitable. Fort Lee has considered these properties and attempted to protect them to some degree through the mentioned 10' buffer zone. It is not required to do more.
The evidence clearly demonstrates that the zoning of the tract was a matter for the best judgment of the municipal governing body. Its determination to change part of a previously zoned residential area to a business zone is beyond fair criticism as arbitrary or capricious.
Affirmed.